**GENERAL MILLS, INC., a corporation, et al., Plaintiffs,**

v.

**Betty FURNESS, Commissioner, Department of Consumer Affairs, City of New York, Defendant.**

**No. 73 Civ. 2497.**

United States District Court,
S. D. New York.

July 2, 1974.

**152**

William J. Condon, New York City, for plaintiffs; Carpenter, Bennett & Morrissey, Newark, N. J., of counsel.

Adrian P. Burke, Corp. Counsel of the City of New York by Joseph Halpern, Jane Fankhanel, Renee Modry, Joseph I. Lauer, Asst. Corp. Counsel, New York City, for defendant.

*Memorandum Opinion and Order*

MOTLEY, District Judge.

Plaintiffs, who are manufacturers and packagers of wheat flour, have brought this action for a declaratory judgment. Jurisdiction is based on 28 U.S.C. §§ 1331(a), 1332(a), 1337.

Plaintiffs have requested injunctive relief against the Commissioner of Consumer Affairs, City of New York, to restrain the enforcement of Section 833–16.0 of the Administrative Code of the City of New York against retail distributors of their flour products.

The ordinance makes it ".  .  . unlawful to sell or offer for sale any commodity or article of merchandise, at or for a greater weight or measure than the true weight or measure thereof. .  .  ."

The essence of plaintiff's claim is that the city ordinance does not allow for reasonable weight variations resulting from inevitable losses of moisture and, therefore, violates Due Process and imposes a burden on interstate commerce. Plaintiffs also claim that the ordinance is preempted by the federal Fair Packaging and Labeling Act, 15 U.S.C. § 1451 *et seq.*, and the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*.

The court, in an opinion dated February 22, 1974, ruled that the ordinance did allow for reasonable weight variations resulting from moisture loss. The court also ruled that the ordinance, as applied, did not deny plaintiffs their rights under the Due Process Clause and that the Commerce Clause does not bar all state and local regulation of weights and measures of packages which have been transported in interstate commerce. The court denied plaintiffs' motion for preliminary injunction and granted defendant's motion for summary judgment, in part. The court limited trial of the permanent injunction to the question whether the city ordinance unnecessarily burdens interstate commerce. It was

ruled that plaintiffs would have to prove first that the ordinance, as applied, imposed standards substantially more stringent than those of applicable federal laws *and* that the municipal requirements exceeded the limits necessary to vindicate legitimate local interests, unreasonably favored local producers, or constituted an illegitimate attempt to control the conduct of packagers beyond the borders of New York State. *Florida Avocado Growers v. Paul,* 373 U.S. 132, 154, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

The trial of the permanent injunction was concluded on May 1, 1974. The court at that time denied plaintiffs' motion for a permanent injunction and granted defendant's motion to dismiss the complaint for the reasons herein.

It appears that the city ordinance is substantially more stringent than the applicable federal statutes, as applied. Both the city ordinance and federal regulation permit reasonable variations caused by loss of moisture during the course of good distribution practice.[1]

However, plaintiffs offered testimony that federal inspectors do not examine packages on retailers' shelves. (Testimony of Malcolm Jensen). Since much of the moisture loss occurs after the packages leave the manufacturers' plants, examinations by city inspectors conducted at retail stores are likely to result in discoveries of moisture losses which federal inspectors do not detect.

Nevertheless, plaintiffs have not shown that the city ordinance is unnecessarily burdensome. There has been no showing that the ordinance's enforcement unreasonably favors local producers and plaintiffs have not shown that the municipal requirements exceed the limits necessary to vindicate legitimate local interests.

■ In view of a municipality's interest in regulating weights and measures, "one of the oldest exercises of governmental regulatory power," *Swift & Company v. Wickham,* 230 F.Supp 398, 402 (S.D.N.Y.1964) (three-judge court), *aff'd,* 364 F.2d 241 (2d Cir. 1966), *cert. denied,* 385 U.S. 1036, 87 S. Ct. 776, 17 L.Ed.2d 683 (1967), a city must be afforded wide discretion in determining what variations from stated weights are reasonable.

■ Plaintiffs' principal argument is that defendant, in issuing violations against retailers, mechanically applies a table of "unreasonable minus or plus errors" contained in a handbook prepared by the U. S. Department of Commerce, National Bureau of Standards, (Handbook 67, National Bureau of Standards, Exhibit A, attached to Answer). Plaintiffs contend that the table was not intended to apply to weight variations resulting from moisture losses and, therefore, does not make adequate allowance for such losses. However, it is not enough to show that defendant applies the table in a manner contrary to the intent of the handbook's author. The question, for purposes of the Commerce Clause, is whether the city's requirements exceed the limits necessary to vindicate its interest in protecting consumers from misleading labeling practices.

■ The handbook has no binding effect on states or municipalities since it merely describes "a method for control-

---

1. With regard to the city ordinance, see this court's opinon, dated February 22, 1974, at p. 4.
   The federal regulation provides as follows:
   "The declaration of net quantity shall express an accurate statement of the quantity of contents of the package. Reasonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large." 21 C.F.R. 1.8b(q) (1973).

ling various types of pre-packaged commodities." (Handbook 67, p. 1). The question is whether the city is acting reasonably when it concludes that variations of the magnitude described in the table are ordinarily unjustified, bearing in mind that the table is only used to determine whether there has been a *prima facie* violation of the ordinance.

The court cannot find that the city is acting unreasonably when it issues violations based on weight variations in excess of those allowed in the table. As the court held in its opinion of February 22, 1974, the city could rationally conclude that ordinarily weight variations greater than those indicated in the table were unjustified. Such variations may be the result of factors other than moisture loss, such as under-fills by the packagers or leaks in the packages. Variations may also be the result of excessive moisture losses resulting from poor distribution practices. An inspector cannot be required to determine, in advance of issuing a summons, whether a weight variation is impermissible. It is enough that after the summons is issued the retailer be afforded a reasonable opportunity to show that the weight variation was unavoidable.

In this connection, the city contends that when a violation is issued, the retailer is afforded an opportunity to meet informally with city officers to attempt to reach a settlement with the city. If a settlement cannot be reached or if a retailer fails to appear at the settlement conference, the city could commence civil proceedings to collect a penalty of $100 for each violation, Administrative Code of the City of New York, § 833–22.0, or criminal prosecutions, § 833–23.0. Plaintiffs have made no showing that the fact that weight variations resulted from inevitable moisture losses would not be recognized as a defense in such proceedings. They have, therefore, failed to show that the ordinance, as applied, exceeds the limits necessary to protect the city's legitimate interest in fair packaging.[2]

■ Finally, the court finds that the ordinance, as applied, does not constitute an illegitimate attempt to control the conduct of packagers beyond the borders of New York. The city has a legitimate interest in regulating weights and measures even though its regulations may inevitably require out-of-state packagers to alter their practices to conform to the local standards. So long as the city acts reasonably, such regulations do not unnecessarily burden interstate commerce.

Plaintiffs' motion for a permanent injunction is denied and defendant's motion to dismiss the complaint is granted.

So ordered.

2. Plaintiffs have not argued that there is no legitimate interest in preventing excessive moisture losses, although they did argue, unsuccessfully, on the defendant's summary judgment motion, that the *city*, as opposed to the federal government, had no such legitimate interest.

It is arguable that there is no legitimate interest because the consumer can always add tap water to make up for excessive moisture losses. However, the consumer would ordinarily have no way of knowing that water could be added without diluting the mix. The city might rationally conclude that consumers who did not know that their flour packages were short-weighted as a result of moisture losses and that additional water could, therefore, be added to recipes without diluting the mix would, in order to meet their cooking needs, end up buying more flour than they would have if excessive moisture had not been lost.

It might be noted that the federal regulation also seems to proscribe variations from stated weight caused by excessive moisture losses. See p. 4, and n. 1, *supra.*